Good morning, Your Honors. May it please the Court, my name is Jeffrey Cheshire, Assistant Federal Public Defender of Tucson, Arizona. I represent the Appellant Juvenile in this case. Your Honors, we have two bases that we raise in terms of legal problems below. The first was an insufficiency of proof. The second dealt with disposition in this case and the record that the Court made the reasoning for the sentence of detention at the disposition hearing. I'd like to talk about the second argument. I think that a fair reading of the record below reveals that the District Court did not articulate any, certainly any degree of clarity on the rehabilitative purposes of the Juvenile Delinquency Statute. I think the Government argues... Counsel, he was within days of his 18th birthday, is that correct? Correct, Your Honor. How close? I think the Court is right within days. Okay, and at his 18th birthday, could he still have been, after his 18th birthday, could he still have been treated as a juvenile? In terms of, the act was committed under the age of 18, therefore it fell into the... So he could still be treated as a juvenile even though he had subsequently turned 18. And that's exactly what happened in this case. How long between the time that he committed the act and the time of the sentencing? The time of disposition. He was out of custody for maybe 6 to 8 months, I believe, when the Government actually picked him up a couple of times, but didn't find the warrant. He was eventually arrested at a INS transit point investigation. In other words, they had people at a bus station in Casa Grande, Arizona. Roughly around 17 and a half when he committed this act. I think he was close to the age of 18, but under 18, and he was, it was maybe close to a year later when he actually had his disposition, I believe. If he had committed this act after the age of 18, would they have had to try him as an adult? Yes, Your Honor. So he was within months of being tried as an adult here. We had a prior record? Yes, Your Honor. What did the prior record consist of? Well, I mean, the record is not good for us. He had a prior drug conviction that was similar in nature to the allegations in this case. He was at a port of entry with drugs, marijuana, and he was turned over to the state authorities who put him on probation. That was an adult adjudication. So the facts of this case are not necessarily... So he had already been treated as an adult in a prior action? That's correct. Okay. And did we have immigration violations as well? We do, Your Honor, except those are problematic. It turns out that this juvenile, or at the time of the offense was a juvenile, this individual was a U.S. citizen. He had a birth certificate. However, he was not believed when he told officials that he was a U.S. citizen. He did get a couple of 1325 illegal entry convictions, which he received days for. So he did not assert his citizenship. And that's one of the reasons that we proffered in terms of the evidence that he would be sent to a port of entry where he had before not been believed that he was a U.S. citizen. Was the judge aware of the priors? Yes, Your Honor. It was a predisposition report that did disclose those. So we're not arguing a reasonableness standard in terms of the history of this particular individual. There are problems with this case in terms of him being a poster child for a feel-good story. The investigator has problems. However, I think that procedurally it's important that the district court, if it's treated as a juvenile case, which it was, it was not prosecuted as a criminal prosecution. The government could have sought transfer in this case but did not. So it was treated solely as a juvenile matter. And that's extremely important because the procedural protections are not in place that would have been in a criminal case. He went to an equivalent of a juvenile court and was called and the government had to put on its case. He did not get the right to jury. It's a relaxed standard. He didn't want to be tried as an adult, did he? That's correct, Your Honor. I mean, he heard this to the other. That's right. But that's absolutely correct. So there are benefits to the juvenile, but there are also limits placed on the protections that they have in the juvenile proceedings because it's considered to be rehabilitative and non-punitive in nature. Two things. First, what was the sentence recommended by the pre-sentence report? And that's important. It was recommended probation with no detention because the pre-sentence report writer believed that detention would not serve a rehabilitative purpose in this case. Did the district court recognize that, note it, discuss it, or otherwise explain why he wasn't following it? He discussed it in terms that are completely inapposite to the juvenile act. He said that basically, am I the only one here that sees that you're a drug dealer? If you're going to be a drug smuggler, that's how I'm going to treat you, as a drug smuggler. And if that's the way you want to support your family back home, that's well and good. But if that's what you want to do, be willing to be a man and pay the price. So I think the judge is clearly treating this case as a criminal matter. And, again, there's history that's problematic. I see why the district court is saying that. But this is not a criminal case. And my second related question is, I gather that your argument is essentially a procedural one and that the district court could, on remand, say, I have looked into this. I understand the rehabilitative purposes of the Juvenile Act. I understand that I'm supposed to give him the least restrictive sentence. Given his history, this is the least restrictive sentence. And then that would be the end of it. I think the court is correct. I think that the process, however, is important. It's not pro forma. And I think that's why the government cited in Supplemental Authority Mix, and we did Circuit, which I think are harmonious in that Mix dealt with an adult pre-Booker, sorry, post-Booker case. And the process that's due there, once you go through the threshold of, okay, the guidelines were calculated and they were considered, they were calculated correctly and then considered, that the other factors then come into play. I think that this case is analogous because the factor of rehabilitation is the central factor, is the basis, the baseline, the starting point. So you can look at it one of two ways. Either that where the guidelines don't apply, the starting point in a juvenile case is rehabilitation and then other factors may come into play as well. Or you can look at it like Cooper that if the guidelines don't apply, that the court needs to consider and articulate on the record his reasoning in imposing a sentence in light of the purpose of rehabilitation. Rehabilitation in the past did not work for your client, has it? I mean, he'd been sentenced before and still at it. Well, rehabilitation was not, that was an adult adjudication and probationary services were not provided because he was deported. So I don't think we can categorically say that it didn't work because I think it wasn't tried. In other words, this individual was not helped in the past to hopefully change his ways before he, as he is now, is an adult. So I think that it's important that the court, on the record, identify the rehabilitative factors and say either why they wouldn't work or at least give us something. So if we're in a reasonableness review, we have no reasoning to review. And that, I think, is a problem that requires remand because if we can't look at the reasoning, we can't determine whether it was reasonable. And I think that's what Cooper talks about. What sort of sentence did he receive before? He received a probationary sentence, Your Honor. Well, that's sort of rehabilitative. At least in scope or motive, right? I mean, that's the sort of thing that he would do as a juvenile under probation. That's correct, Your Honor. I mean, but the reason he was deported, he wasn't provided the normal services that one would consider a probationer to have received. So in that case, it was sort of a do-good probation. And you know, if you come back, you're going to be in trouble. Whereas it's not something that rehabilitated him. But the fact is that he was in the juvenile justice system. He didn't have the protections afforded to an adult. And that's to recognize the rehabilitative nature of the juvenile proceeding. And yet the judge did not articulate any rehabilitative grounds for his sentence. I'd like to reserve it. Thank you very much, Your Honor. Good morning, Your Honor. May it please the Court. I'm Chris Cabanillas from the District of Arizona. The defendant is focusing on the dispositional issues, who I will come to to in a moment. He was two days before he turned 18. The district court made that comment at sentencing, which is our team. What exactly is the relevance of that? The statute still covered him. And the proscription of our case law and of the statute that the rehabilitative purposes were therefore paramount still apply? Absolutely. So what's the relevance of that? Oh, I was just answering his question. I understand. But I'm asking what's the relevance because you've repeated it several times in your brief as well. What is the relevance of it? Well, in terms of perhaps this also gets to Judge Seiler's point about how this is somebody for whom probation has proven ineffective. And that's something that the district court noted at sentencing. The rehabilitative purpose of the Federal Juvenile Delinquency Act does not exclude that detention can be used as a method of achieving rehabilitation. And that's what the district court noted here. The district court didn't use the phrase rehabilitation when he's sentencing the defendant. But if you look at what the district court did here, the district court decided that giving this defendant two years of detention, he faced a possibility of five years under the juvenile statutes, which is again less than the ABA standards. So not an abuse of discretion. This court's juvenile 2003 case does not exclude the use of detention as a way to obtain rehabilitation. And if you look at, and Judge Collins has a great folksy way of addressing defendants very informally. And you can see it when he makes these phrases about, you know, I think you're capable of getting it together. You know, it's time for you to be a good man. Stop sliding. You know, those are all, you know, he's determining that 24 months is what this particular defendant needs to rehabilitate and to be a good man. And that's why I think he has taken that into consideration. It's not done in a specific manner as the defendant submits should be done. But I disagree. I don't think it needs to be done that way. We filed a mixed case in our 28J letter. That's a case the court filed approximately a week or so ago. And in the context of an adult conviction, 3553 factors that need to be considered under Booker, the court noted that, you know, a judge doesn't have to recite the 3553 factors, doesn't have to state on the record he's considered as long as the record fairly reflects that. And here we have the defendant at sentencing arguing all about rehabilitative needs. And so the district court's aware of that. The government in its pleading also talked about what would be best for the defendant's rehabilitation. The PDR recommendation of the Probation Department on page 10 of their PDR, when they're recommending what they submit is a good result here, they note the rehabilitative purpose. So, again, the record is chock full of ways the district court would have known that there's a rehabilitative purpose behind the FJDA. And the sentence in this case did further that. You can get around this previous juvenile case, the 2003 case you referred to. Oh, no need to get around it. You can follow it. And this case is just fine within it. There's actually some, there's a quote in there that the FJDA requires the assessment of the totality of unique circumstances and rehabilitative needs of each juvenile. And this particular defendant, unfortunately, had committed this same crime before. He had been on supervision at the time he committed this same crime. Supervision, and that's where the Probation Department, we would respectfully agree with the district court here, the recommendation of just supervision was not a good one in light of this defendant's history. And the problem was that, again, he was going to be deported is what the Probation Office thought, although that was questionable, I gather. Yeah, you know, as far as what the defendant's ultimate immigration status is, the record really doesn't clearly reflect that. I also think that's another reason why the arguments on knowledge, that the flight is solely for immigration, that that's something that the district court found. No, his flight was based on what it believed to be the knowledge of knowledge. But the judge said things that certainly sounded purely subjective, such as, if that's what you want to do, but be willing to be a man and pay the price. Today you pay the price. And that doesn't sound like somebody who's saying that we are trying to improve you as opposed to punish you. Well, again, I guess I'd say that district courts can articulate things in so many different ways, and I think it's the bottom line. It gets back to your question that you asked counsel. If we remand this case back, we could have Judge Collins state, I did this for a rehabilitative purpose. I was considering the FJDA. But I do believe that would be an empty exercise, because in this particular case, the totality of circumstances would show the district court was obviously aware of it. He's articulating what he believes this particular defendant needs. And as the First Circuit's Patrick case noted, juvenile did not preclude. You know, they were analyzing the juvenile 2003 case, this court's case, and they noted that it did not preclude the use of detention as a way of getting a defendant to accept responsibility and to further his rehabilitation. And that's what we have in this case, is a district court determining that purely probation or supervision would just not be adequate. And that's how he can, again, using the vernacular, stop sliding, be a good man, and basically increase his maturity. And that's what you have if you look at the whole picture of what Judge Collins was doing in this particular case. Did he refer at all to the Federal Juvenile Delinquency Act? He didn't say those words, no. He did not. But you're saying that's not required. You don't have to go through it. It's not required, and again, particularly when you have the defendant arguing all about the rehabilitation purpose of the FJDA. I mean, he's obviously hearing that. I don't think he needs to parrot it when he's sentencing the defendant. But he also just never – I understand this may be pro forma, but we do these things sometimes. There are reasons to do it in terms of the system as a whole, to see that things are done in an orderly fashion. And to have – be sure that there is some self-consciousness on the part of the judge as to what he's doing. It's really that perception of self-consciousness, whether he understood what the standards were, that is somewhat lacking here. He never says anything about rehabilitation. He never says anything about how this is going to help him or to – he does say that he hopes he doesn't do it again, but he doesn't say anything connecting to the sentence to that hope or admonition. I actually disagree. I think that if you look at what he's saying, he's telling the defendant this is the way that he's going to get it together. The defendant's going to get it together. We need to stop sliding. Also, he notes that when the defendant's in the juvenile detention facility, he'd be able to get help with his immigration status to the Florence Project's pro bono project. So that could also further his particular situation. And in footnote 5 of our brief, we list all the different things that occur at that Stafford juvenile facility – the education, the counseling, the rehabilitation. I mean, that is what occurs. His term of incarceration is going to be served where? In footnote 5, we note the Bureau of Prison's sole contracted for a secure juvenile facility is the regional center in Stafford, Arizona. And it requires its contractors to ensure quality programming 50 hours per week for all federal juveniles. In addition, it offers – it's a 24-bed facility offering educational programs, counseling and psychological services, structured recreational activities, substance abuse education, helps them with their financial planning. And basically, it helps them engage in basically transitioning them back into society. So the location at where this particular individual was going to be housed. Did the district court calculate this sentence with reference to the sentencing guidelines for adults? The district court had this particular defendant been convicted as an adult. And actually, the district court thought that the government had given this particular defendant a break here. But he found that had he been convicted as an adult, he would have faced a guideline range of 70 to 87 months and a minimum mandatory of five years, of course, because this was over 100 kilograms of marijuana. So overall, again, looking at the whole picture here, the district court – But the district court did mention the sentencing guidelines. Yes, he did. And also, he knew – Did he mention that he was a juvenile at that point? Well, he knew he was a juvenile because he said he was two days under his 18th birthday. Right. And he says that the government treated him as a juvenile, and that's at the record. The sentencing transcript of page 18 as well as page 15 to 16, he's making comments about how this particular defendant benefited from the fact that he'd been treated as a juvenile as opposed to an adult. So overall, again – And particularly, this court noted in juvenile that – And this is nothing like juvenile. Fourteen-year-old defendant in that case. No prior history. Seven-year max that that juvenile received. This juvenile here, his criminal history showed he was no babe in the woods. And he also received a sentence that was less than one-half of what the maximum would be and less than the ABA guidelines, which this court in juvenile found quite relevant. Thank you very much. Thank you. Thank you. Counsel? Your Honors, I think it's important to note that the juvenile proceeding is not criminal light. It's a rehabilitative purpose, and that should be the whole impetus behind the proceedings. If the government wants to avoid that, they should seek transfer. So just because someone received less time than they would have as an adult – But he was, in fact, sentenced to a juvenile facility. Well, that's required by statute. If it's a disposition, he cannot be housed with adults. There were some factors relating to his pretrial detention, which he did not get credit for, which effectively gave him another half a year in prison compared to an adult. But he was not able to be housed with adults. But I think the court did not identify the reasons as to putting him there. Just because he ended up there does not save the court from not articulating its reasons and giving him the process that was – Is it of any relevance that the alternative at that point seemed to be probation without any actual supervision because he would go back to Mexico? I think it's questionable whether he would have gone back to Mexico because we proffered a birth certificate, which the court accepted as genuine. So I think the district court had the authority to stay deportation and could have monitored the case, could have had a wide array of options open to it, had probation, had follow-ups. I mean, detention in this case, I'm not saying is objectively unreasonable. The problem is that there's no indication in the record as to how he got there other than the punitive language that the court has already identified and the same language I would submit that a court would use with an adult defendant, such as we hope you don't do this again, we hope you learn from your mistakes and this will give you a lot of time to think about it. That's what I hear courts tell adults in virtually every sentencing as well. We hope that they rehabilitate, but it's a different focus and a different standard for a juvenile, and that's what was lacking in this case. Thank you very much, counsel. The case of the United States v. Chicago is submitted. The next case, United...
judges: Siler, Berzon, Bybee